UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JACKSON LEWIS LLP**
**One North Broadway, Suite 1502**
**White Plains, New York 10601**
**(914) 328-0404**
**Attorneys of Record for Defendants and Manuel J. Aluma**
**Michelle E. Phillips, Esq. (MP 4252)**
**Ian H. Hlawati, Esq. (IH 1793)**

-------------------------------------------------------------------X
                                                                   :
JANE A. WILSON                                                     :
                                                                   :
                                    Plaintiff,                     :
                                                                   :
             v.                                                    :    07 CV 7058 (KMK) (MDF)
                                                                   :    ECF CASE
MARYKNOLL FATHERS & BROTHERS; FR. JOHN                             :
BARTH; FR. RICHARD FRIES; ADRIANE GLASS;                           :
FR. JOHN McAULEY; FR. FRANCIS McGOURN;                             :
FR. LEO SHEA; and FR. JOHN SIVALON,                               :
                                                                   :
                                    Defendants.                    :
-------------------------------------------------------------------X

<u>**DEFENDANTS' AND MANUEL J. ALUMA'S MEMORANDUM OF LAW**</u>
<u>**IN OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY**</u>

# TABLE OF AUTHORITIES

## *FEDERAL CASES*

In re "Agent Orange" Prod. Liability Litigation, 800 F.2d 14 (2d Cir. 1986) ....................9

Board of Education v. Nyquist, 590 F.2d 1241 (2d Cir. 1979) ...............................5, 6, 10

Blue Cross and Blue Shield of New Jersey v. Philip Morris, Inc., 53 F. Supp. 2d
    338 (E.D.N.Y. 1999)..............................................................................................5

Ceramco, Inc. v. Lee Pharm., 510 F.2d 268 (2d Cir. 1975) .......................................6

Cheng v. GAF Corp., 631 F.2d 1052 (2d Cir. 1980) vacated in GAF Corp. v.
    Cheng, 450 U.S. 903 (1981) ................................................................................9

Cinema 5 Ltd. v. Cinerama, Inc., 528 F.2d 1384 (2d Cir. 1976)................................9

Cresswell v. Sullivan & Cromwell, 922 F.2d 60 (2d Cir. 1990) ................................5

DeVittorio v. Hall, 2007 U.S. Dist. LEXIS 91496 (S.D.N.Y. Dec. 12, 2007) ..................9

Ehrich v. Binghamton City Sch. District, 210 F.R.D. 17 (N.D.N.Y. 2002) .........................3

Evans v. Artek System Corp., 715 F.2d 788 (2d Cir. 1983)........................................9

Human Electrics v. Emerson Radio Corp., 375 F. Supp. 2d 102 (S.D.N.Y. 2004).............5

Ingram v. Coca-Cola Co., 200 F.R.D. 685 (N.D. Ga. 2001) ...........................................10

Kempner v. Oppenheimer & Co., 662 F. Supp. 1271 (S.D.N.Y. 1987) ...............................3

In re Methyl Tertiary Butyl Ether Products Liability Litigation, 438 F. Supp. 2d
    305 (S.D.N.Y. 2006)..............................................................................................6

Reilly v. Computer Associates Long-Term Disability Plan, 423 F. Supp. 2d 5
    (E.D.N.Y. 2006)......................................................................................................5

Team Obsolete Ltd. v. A.H.R.M.A., Ltd., 2006 U.S. Dist. LEXIS 48765
    (E.D.N.Y. July 18, 2006) .......................................................................................5

United States v. Arena, 918 F. Supp. 561 (N.D.N.Y. 1996)........................................5

Weeks Stevedoring Co. v. Raymond International Builders, Inc., 174 F.R.D. 301
    (N.D.N.Y. 1997) .....................................................................................................3

Defendants, Maryknoll Fathers & Brothers (incorrectly named in this action as "Maryknoll Fathers & Brothers" and correctly named "Catholic Foreign Mission Society of America, Inc."); Fr. John Barth; Fr. Richard Fries, Adriane Glass; Fr. John McAuley; Fr. Francis McGourn; Fr. Leo Shea; and Fr. John Sivalon (hereinafter "Maryknoll" or "Defendants") joined by non-party, Manuel J. Aluma ("Aluma"), hereby submit this Memorandum of Law In Opposition to Plaintiff's Motion To Disqualify Counsel, in accordance with the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and Local Rules of the United States District Court for the Southern District of New York.

## PRELIMINARY STATEMENT[1]

Defendants and Aluma submit this Memorandum of Law in reply to Plaintiff's Motion to Disqualify Counsel, filed on January 15, 2008. Plaintiff commenced this action on or about August 8, 2007 by filing a Summons and Complaint with the United States District Court for the Southern District of New York. On or about October 4, 2007, Defendants timely answered Plaintiff's Complaint. On or about December 12, 2007, Plaintiff served her First Set of Interrogatories and First Request for Production of Documents seeking information relating to Aluma – a former applicant for employment with Maryknoll (Attached hereto as Exhibit "1"). On or about January 2, 2008, Plaintiff served a subpoena upon Aluma seeking sworn testimony to be given on February 14, 2008.[2]  (Attached hereto as Exhibit "2"). On, January 3, 2008, Defendants' counsel notified Plaintiff's counsel, by letter (Plaintiff ["Pl."] Exhibit "A"), that it

---

[1] For purposes of this opposition, we are divulging client communications between Jackson Lewis LLP and Manuel J. Aluma ("Aluma").  However, Aluma and counsel do not waive the attorney/client privilege beyond the instant memorandum in opposition.

[2] A copy of the Subpoena purportedly served by Plaintiff on January 2, 2008 is attached hereto as Exhibit "2". Despite ostensible service on Aluma, Plaintiff's counsel failed to serve a copy of a discovery subpoena upon counsel for Defendants, as required of any similar discovery document under Fed R. Civ P. 5. Moreover, Plaintiff failed to file the required Proof of Service under Fed. R. Civ P. 45(b)(4) with this Court.

1

represented Aluma for purposes of this litigation and requested that Plaintiff withdraw the subpoena served on Aluma.   Plaintiff refused and, without further discussion with opposing counsel, lodged a request for a pre-motion conference with District Judge Kenneth J. Karas on January 11, 2008.   Plaintiff's instant motion was filed four (4) days later, on January 15, 2008. Aluma and Defendants oppose Plaintiff's Motion, which should be denied in its entirety.

## RELEVANT FACTS

Plaintiff has not proffered any factual basis for her motion to disqualify Jackson Lewis LLP's ("Jackson Lewis['s]") representation of Aluma, asserting, *ipse dixit*, that Aluma's interests are adverse to those of the Defendants in this matter and that there is a conflict of interest that was either not disclosed to Aluma and/or precludes Jackson Lewis' representation. Plaintiff's counsel's affirmation of his belief does not make it so.

To the contrary, Aluma previously acted as an independent consultant to various Maryknoll Society Members as a psychotherapist and counselor regarding priesthood.   See Affidavit of Manuel J. Aluma ("Aluma Affidavit"), at ¶11.   Plaintiff had no interaction with Aluma and worked in a different – secular – department, which was geographically remote from where Aluma performed his counseling duties for Maryknoll priests.   Plaintiff, on the other hand, performed fundraising duties in Maryknoll's Mission Education and Promotion Department, which entailed absolutely no interface with Aluma.   Aluma has never been involved in litigation with Defendants, nor been in a position adverse to his current counsel, Jackson Lewis.

The only conflict of interest created in this matter is the conflict Plaintiff's counsel created himself by his aggressive and ethically improper tactics.   On December 13, 2007, Plaintiff's attorney, Harman, contacted Aluma several times and attempted to manipulate Aluma into representation by intimating that Aluma was somehow "involve[d]" in the instant matter.   See Aluma Affidavit, at ¶1. In so doing, Harman stated that he was "trying to establish

a pattern of discrimination because of Jane [Wilson]'s lawsuit as a female and lesbian" and that

"he and his client believed it was a "good idea to extend to you [Aluma] the opportunity for me

[Harman] to represent you with respect to any involvement you may have . . . *I think it would be*

*in your best interest and certainly in my client's best interest to have me represent you*." See

Aluma Affidavit, at ¶1 (emphasis added).   Beyond Aluma, Harman contacted a former

Maryknoll employee, Teresa McGee ("McGee") and warned her against "the aggressive

Maryknoll lawyers" who will try and "scare", "coach", "incentivize" and "threaten me [McGee]

with liability."   See Affidavit of Michelle E. Phillips, Esq. ("Phillips' Affidavit"), at ¶¶13-15.

After realizing that McGee was represented by Maryknoll's attorneys, Harman used this as a

means by which to manipulate Aluma here, stating "they've already gotten Teresa [McGee] and

Maryknoll wants to control everything." See Aluma Affidavit, at ¶1.

Had Plaintiff's counsel performed even the most basic due diligence or sought

clarification of the matter from opposing counsel before making a scurrilous filing,[3] it would

have been revealed that:

1.   Aluma was never an employee of Maryknoll; See Aluma Affidavit, at ¶11;

2.   Aluma was never a litigant against any of the Defendants in this matter;   See

Aluma Affidavit, at ¶12;

---

[3] Further, Planitiff's counsel intentionally bypassed the Magistrate Judge by seeking a pre-motion conference from District Judge Karas on January 11, 2007.  This procedure was in direct contravention of Judge Karas' Order of Reference dated December 7, 2007, which referred all discovery and non-dispositive pretrial motions to Magistrate Judge Fox.  Moreover, Defendants herein seek sanctions authorized under Fed. R. Civ. P. 11(c)(3), for Plaintiff's counsel's utter failure to attempt to resolve the instant dispute with opposing counsel before seeking judicial intervention on a motion based on nothing more than counsel's "soothsaying".  See Kempner v. Oppenheimer & Co., 662 F. Supp. 1271, 1283 (S.D.N.Y. 1987); Weeks Stevedoring Co. v. Raymond Int'l Builders, Inc., 174 F.R.D. 301, 305 (N.D.N.Y. 1997).  Should this Court decide not to impose sanctions at this juncture, Aluma's counsel requests that this motion be considered as part of a sanctionable continuing course of conduct should Plaintiff's counsel seek to file other baseless motions during this litigation.  See Ehrich v. Binghamton City Sch. Dist., 210 F.R.D. 17, 26 (N.D.N.Y. 2002) (sanctions calculus includes consideration of "a pattern of behavior" and "the effect on the litigation in time or expense").

3. Aluma was never involved in Maryknoll's fundraising, nor had any interaction with Maryknoll's Mission Education and Promotion Department where Plaintiff previously worked; See Aluma Affidavit, at ¶¶17-19; and

4. Aluma never interacted with Plaintiff, nor even met her. See Aluma Affidavit, at ¶18.

Further, as a result of being solicited by Plaintiff's attorney[4] in a matter in which Aluma had zero knowledge or interest, Aluma took the following actions:

1. Aluma unilaterally sought assistance from Defendants and Defendants' respective counsel; See Aluma Affidavit, at ¶6; Phillips' Affidavit, at ¶¶2-3.

2. Aluma was not initially contacted by Jackson Lewis, other than in response to Aluma's request to discuss Harman's improper and aggressive tactics; See Aluma Affidavit, at ¶¶3, 5-6, 15; Phillips' Affidavit, at ¶¶3-4, 13.

3. Aluma is not bound by a confidentiality agreement that would preclude him from testifying in this matter (even adverse to the interests of Maryknoll), if he had knowledge relevant to this litigation; See Aluma Affidavit, at ¶9;

4. Aluma was never "threaten[ed]" in any manner; See Aluma Affidavit, at ¶8; Phillips' Affidavit, at ¶¶10, 12-13.

5. Aluma voluntarily asked Jackson Lewis – his counsel of choice – to represent him, as one means to avoid being involved in a litigation in which he had no knowledge or interest; See Aluma Affidavit, at ¶7, 16-19; Phillips' Affidavit, at ¶¶6-8.

---

[4] See infra at 7-8 (describing the fact that no one contacted or solicited Aluma except Plaintiff's counsel, who did so in contravention of the New York Disciplinary Rules of the Code of Professional Responsibility).

4

6. Aluma was never previously represented by Jackson Lewis, nor was he involved in any matter in which Jackson Lewis represented interests adverse to Aluma; See Aluma Affidavit, at ¶7; Phillips' Affidavit, at ¶¶3, 9.

7. Aluma executed a joint representation agreement that disclosed all conflicts necessarily associated with any joint representation arrangement; See Aluma Affidavit, at ¶13-14; see also Phillips' Affidavit, at ¶¶6, 8, 11.

The above represents the relevant facts as set forth in the Aluma affidavit attached hereto. Based on Aluma's affidavit and the supporting affidavit of Michelle E. Phillips,[5] there is no basis whatsoever for disqualification of Jackson Lewis as counsel for Aluma – a non-party with no interest in the instant litigation and no history of collateral litigation with Defendants.

## STANDARD OF REVIEW

A motion to disqualify is left to the sound discretion of the district court. See Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990); Team Obsolete Ltd. v. A.H.R.M.A., Ltd., 2006 U.S. Dist. LEXIS 48765 (E.D.N.Y. July 18, 2006); Human Elecs. v. Emerson Radio Corp., 375 F. Supp. 2d 102, 105 (S.D.N.Y. 2004); Blue Cross and Blue Shield of New Jersey v. Philip Morris, Inc., 53 F. Supp. 2d 338, 342 (E.D.N.Y. 1999). Notwithstanding a trial court's discretion, disqualification of counsel is a "drastic measure," requiring a careful balancing of competing interests. See Reilly v. Computer Assocs. Long-Term Disability Plan, 423 F. Supp. 2d 5, 8 (E.D.N.Y. 2006).

Moreover, the Second Circuit has shown considerable reluctance to disqualify attorneys "despite misgivings about the attorney's conduct." Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979) (citing W.T. Grant Co. v. Haines, 531 F.2d 671 (2d Cir. 1976));

---

[5] See cf United States v. Arena, 918 F. Supp. 561, 578 (N.D.N.Y. 1996) (Court assuming truth of affidavit for purposes of considering motion to disqualify).

Ceramco, Inc. v. Lee Pharm., 510 F.2d 268 (2d Cir. 1975)). Disqualification has an "immediate adverse effect on the client by separating [it] from counsel of [its] choice. . . ." In re Methyl Tertiary Butyl Ether Products Liability Litigation, 438 F. Supp. 2d 305, 307 (S.D.N.Y. 2006) (quoting Nyquist, 590 F.2d at 1246). Further, the court must also be mindful that disqualification motions, like here, can often be "interposed for tactical reasons." Nyquist, 590 F.2d at 1246.

The standard for evaluating motions to disqualify in this Circuit is Bd. of Educ. v. Nyquist, 590 F.2d 1241 (2d Cir. 1979). With rare exceptions, "disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interest in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the attorney's representation of his client [citations omitted], or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, for example, in violation of Canons 4 and 9, thus giving his present client an unfair advantage [citations omitted]." Nyquist, 590 F.2d at 1246. Therefore, "unless an attorney's conduct tends to 'taint the underlying trial' by disturbing the balance of the presentations" in one of these two ways, "courts should be quite hesitant to disqualify an attorney." Id (quoting W.T. Grant Co., 531 F.2d at 67 8).

## ARGUMENT

### DISQUALIFICATION OF JACKSON LEWIS, AS COUNSEL FOR ALUMA, HAS NO BASIS IN LAW OR FACT, BUT IS SOUGHT BY PLAINTIFF AS A MEANS TO OBSCURE UNETHICAL CONDUCT BY PLAINTIFF'S COUNSEL, WHICH WAS REBUFFED BY ALUMA HIMSELF

Plaintiff and affirmation by her Counsel, Walker G. Harman, Jr. ("Harman"), asserts, *ipse dixit*, that Aluma's interests are adverse to those of the Defendants in this matter and that there is a conflict of interest that was either not disclosed to Aluma and/or precludes Jackson

Lewis' representation. However, to the contrary, Aluma and another non-party – Teresa McGee – initiated contact with Defendants, and then Jackson Lewis, for assistance after being telephoned by Plaintiff's counsel on numerous occasions. Phillips' Affidavit, at ¶¶4, 13-14. No one at Jackson Lewis LLP initiated contact with either Aluma or McGee regarding their representation. Phillips' Affidavit, at ¶¶3, 13-14. Aluma was not "threaten[ed]", but unilaterally sought representation from Jackson Lewis LLP – his counsel of choice. See Aluma Affidavit, at ¶¶5-8; see also Phillips' Affidavit, at ¶¶6, 8. Moreover, contrary to Plaintiff's counsel's unfounded assertion, Aluma executed a dual-representation agreement, which disclosed all conflicts necessarily associated with any joint representation arrangement.[6]

Plaintiff's Counsel is talking out of both sides of his mouth by filing the instant motion to disqualify, while failing to highlight that he, personally, had crusaded to represent Aluma and McGee himself. On December 13, 2007, Plaintiff's attorney, Harman, contacted Aluma several times and attempted to manipulate Aluma into representation by intimating that he was "involve[d]" in the instant matter. In so doing, Harman stated that he was "trying to establish a pattern of discrimination because of Jane [Wilson]'s lawsuit as a female and lesbian" and that "he and his client believed it was a "good idea to extend to you [Aluma] the opportunity for me [Harman] to represent you with respect to any involvement you may have . . . *I think it would be in your best interest and certainly in my client's best interest to have me represent you.*" See Aluma Affidavit, at ¶1 (emphasis added).

This statement by Harman is ethically curious in light of the fact that the only "involvement" Aluma could expect at the time of Harman's statement was involvement that Plaintiff was forcing upon him. This type of conduct by an attorney licensed in New York

---

[6] At the Court's pleasure, Aluma's counsel is willing to provide a copy of the executed dual-representation agreement between itself and Aluma for *in camera* inspection.

presents ethical concerns based on 22 NYCRR § 1200.3(a)(4) (prohibiting "conduct involving dishonesty, fraud, deceit, or misrepresentation"); 22 NYCRR § 1200.33(a)(5) (attorney representation may not entail "knowingly make a false statement of law or fact); see also Cmte on Prof. Ethics, Opinion 796 (Apr. 24, 2006) (noting that, "statements made by lawyers to third parties can become a matter of ethical concern" where a lawyer "[k]nowingly make[s] a false statement of law or fact").

Even more, prior to his solicitation of Aluma, Harman contacted former Maryknoll employee, McGee, in an attempt to secure her testimony and warned her against "the aggressive Maryknoll lawyers" who will try and "scare", "coach", "incentivize" and "threaten me [McGee] with liability." See Phillips' Affidavit at ¶¶13-14. After realizing that McGee was represented by Maryknoll's attorneys, Harman used this as a means by which to manipulate Aluma here, stating "they've already gotten Teresa [McGee] and Maryknoll wants to control everything." See Aluma Affidavit, at ¶1. Again, after being contacted by Harman, both Aluma and McGee reached out to Defendants and Jackson Lewis without any prompting whatsoever, as well as to rebuff the unethical solicitation by Harman, which was obviously in his client's interest – not that of Aluma, here, who otherwise had no knowledge or interest in Plaintiff's lawsuit. It is disingenuous, to say the least, to now file a motion seeking disqualification of Jackson Lewis to ostensibly "protect" Aluma's interests as they relate to the instant matter.

Notwithstanding Harman's unethical behavior, which Defendants' counsel tried to highlight directly to Harman,[7] the claim that Aluma, here, has a conflict of interest with Maryknoll is unfounded. Simply by virtue of the fact that Plaintiff has alleged a discrimination claim based on sexual orientation does not, in turn, align her interests with those of a former homosexual applicant for employment who was never hired by Maryknoll and never met or

---

[7] See Phillips' Affidavit, at ¶¶14-15.

8

worked with Plaintiff.  It is inaccurate to state that "Dr. Aluma's interests are and always have been adverse to Maryknoll's."  Even worse, Harman attempts to create a conflict of interest based on sexual orientation alone, stating, "[g]iven that Dr. Aluma is openly gay and had an employment dispute with Maryknoll, it should be obvious that he has a vested interest in providing testimony in this action involving similar facts."  Although Plaintiff has sought to fabricate a conflict between all homosexuals and Maryknoll, Jackson Lewis LLP's concurrent representation of a non-party in no way impacts the adversarial process.  See In re "Agent Orange" Prod. Liab. Litig., 800 F.2d 14, 20 (2d Cir. 1986) (disqualification inappropriate where not "necessary to preserve the integrity of the adversary process").

Moreover, the cases Plaintiff cites in support of her motion to disqualify do not compel disqualification here and, in fact, are not remotely supportive of disqualification where counsel is a representative of a non-party.  See Evans v. Artek Sys Corp., 715 F.2d 788, 794 (2d Cir. 1983) (remanding district court's disqualification order where counsel for Plaintiff had previously represented a named defendant and where court must weigh party's right to have counsel of choice); DeVittorio v. Hall, 2007 U.S. Dist. LEXIS 91496, at *11 (S.D.N.Y. Dec. 12, 2007) (noting that "[m]otions to disqualify opposing counsel are viewed with disfavor because they are often interposed for tactical reasons" and denying motion to disqualify based on successive representation); Cheng v. GAF Corp., 631 F.2d 1052 (2d Cir. 1980) vacated in GAF Corp. v. Cheng, 450 U.S. 903 (1981) (holding that there was a continuing danger that the former legal services attorney might unintentionally transmit information he gained through his prior association with plaintiff during his day-to-day contact with defense counsel); Cinema 5 Ltd. v. Cinerama, Inc., 528 F.2d 1384 (2d Cir. 1976) (disqualifying firm where corporate counsel worked part-time and which represented a defendant in an antitrust suit filed by the corporation).

Plaintiff has, in no manner, shouldered her burden to show that disqualification is required to protect the adversarial process here. See Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979). Even if Aluma were party to a settlement agreement, this would in no way impact representation of Aluma by outside counsel of his choice, just as an actual employee of employer would not be precluded from being represented by the employer's counsel notwithstanding a prior settlement with the employee(s) that was earlier entered to resolve a workplace conflict, pension issue or compensation dispute. See Ingram v. Coca-Cola Co., 200 F.R.D. 685, 687 (N.D. Ga. 2001) (approving class settlement of discrimination claims that included current salaried employees).[8]

## CONCLUSION

Based on the foregoing, Defendants and Manuel J. Aluma respectfully request that the Court enter an Order: (1) Denying Plaintiff's Motion to Disqualify in its entirety; (2) Admonishing Plaintiff's Counsel, at a minimum, to refrain from filing frivolous, baseless motions, as well as avoiding making improper assertions to third parties; and (3) Awarding Defendants and Manuel J. Aluma such other and further relief as the Court deems just and proper.

Respectfully submitted,

JACKSON LEWIS LLP

Michelle E. Phillips, Esq. (MP 4252)
Ian H. Hlawati, Esq. (IH 1793)
One North Broadway, Suite 1502

---

[8] Although this is not the case between Maryknoll and Aluma, a settlement agreement that is the product of litigation also would likely not serve as a bar to an employee being represented by employer's counsel in a later proceeding impacting the employer's interests, and wholly unrelated to the employee herself. See supra. A settlement agreement resolving a pre-employment dispute between Aluma and Maryknoll does exist, and although it is not dispositive for purposes of Plaintiff's motion, Aluma's counsel, with the consent of Defendants, is willing to provide a copy of the settlement agreement for in camera inspection.

White Plains, New York 10601
(914) 328-0404

ATTORNEYS FOR DEFENDANTS AND
MANUEL J. ALUMA

Dated:  January 29, 2008
White Plains, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JACKSON LEWIS LLP**
**One North Broadway, Suite 1502**
**White Plains, New York 10601**
**(914) 328-0404**
**Attorneys of Record for Defendants and Manuel J. Aluma**
**Michelle E. Phillips, Esq. (MP 4252)**
**Ian H. Hlawati, Esq. (IH 1793)**

---------------------------------------------------------------------X
                              :

JANE A. WILSON                      :

           Plaintiff,        :

      v.                   :     07 CV 7058 (KMK) (MDF)
                              :     ECF CASE

MARYKNOLL FATHERS & BROTHERS; FR. JOHN  :
BARTH; FR. RICHARD FRIES; ADRIANE GLASS;  :
FR. JOHN McAULEY; FR. FRANCIS McGOURN;  :
FR. LEO SHEA; and FR. JOHN SIVALON,  :

           Defendants.     :
---------------------------------------------------------------------X

## CERTIFICATE OF SERVICE

A copy of the foregoing Defendants' and Manuel J. Aluma's Memorandum of

Law In Opposition To Plaintiff's Motion To Disqualify and supporting affidavits of Manuel J.

Aluma and Michelle E. Phillips were served via Federal Express, overnight delivery, this 29th

day of January, 2008, on Plaintiff Jane Wilson's attorney of record at the address listed below:

Walker G. Harman, Jr., Esq.
1350 Broadway, Suite 1510
New York, NY 10018

Ian H. Hlawati